1 F.3d 1243
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Melvin TURNER, Defendant-Appellant.
 No. 92-6381.
 United States Court of Appeals, Sixth Circuit.
 Aug. 4, 1993.
 
 Before: KENNEDY and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Melvin Turner appeals from his jury conviction and sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C. Sec. 922(g). On appeal, defendant contends that: (1) the District Court erred in denying his request for a jury instruction on the defense of justification; (2) the District Court erred in admitting his statements to a law enforcement officer because they were obtained in violation of Miranda; (3) the District Court erred in denying his request to call a surrebuttal witness; (4) the District Court erred in failing to give a limiting instruction as to the predicate felonies set forth in the indictment; (5) the District Court erred in sentencing him as an armed career criminal; and (6) he was denied effective assistance of counsel. For the reasons set forth below, we affirm.
 
 I.
 
 2
 On November 22, 1990, a radio dispatcher for the Shelby County, Tennessee Sheriff's Department received a "911" emergency call from the defendant's ex-girlfriend, Thelma Clay. The 911 operator heard Ms. Clay screaming that defendant was in her house, that he had a gun, and that he was trying to kill her. In addition to loud arguing and scuffling in the background, the operator also heard a man's voice yell, "I'll blow your head off." Immediately thereafter, the operator dispatched sheriff's deputies to Ms. Clay's home. The operator kept the line into Ms. Clay's home open until the deputies arrived and she continued to hear screaming, scuffling, and fighting within the home.
 
 
 3
 When the deputies arrived at 2939 Meadowfair (Ms. Clay's home), only the defendant and Ms. Clay were inside the residence. The deputies noticed that the side door had been broken off its frame and forced open from the outside. Upon entering the home and talking with Ms. Clay (who was still very upset and excited), the officers observed that she had fresh bruises and red welts on her face. Ms. Clay told the officers that the defendant had kicked in her door, beaten her, and fired shots at her. The officers then saw defendant coming out of one of the bedrooms and they arrested him. Just inside this bedroom, the officers found (under the bed) a loaded .22 caliber rifle. The officers also found a spent .22 round on the living room floor and a bullet mark on the living room fireplace.
 
 
 4
 Upon his arrest, the defendant was placed in a squad car outside Ms. Clay's residence. Officer Richard Nelson testified that he advised the defendant of his Miranda rights. The defendant was then questioned by Lt. J.J. Leatherwood of the Shelby County Sheriff's Department. At this time, defendant told Lt. Leatherwood of the Shelby County Sheriff's Department. At this time, defendant told Lt. Leatherwood that he was not shooting at Ms. Clay, but rather, was only shooting at the side of her in an effort to scare her. The defendant also stated that he had gotten into a domestic argument with Clay, that she went and got a rifle, and that he took it from her and put it in the bedroom.
 
 
 5
 On August 21, 1991, defendant was charged in a one-count indictment with possessing a firearm after having been convicted of crimes punishable by a term of imprisonment in excess of one year, in violation of 18 U.S.C. Sec. 922(g).[1] Prior to trial on this charge, the government filed a written notice that it was seeking to have the defendant sentenced pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. Sec. 924(e).[2]
 
 
 6
 During the jury trial, Thelma Clay testified as a witness for the defense. On direct examination she stated that defendant, her ex-boyfriend, entered her house in the middle of the night on November 22, 1990, that he slapped her around "a couple of times," and that she got out her .22 rifle in an effort to make defendant leave. Ms. Clay claimed that she and defendant struggled over the rifle, that it somehow went off, and that defendant then took it away from her. Ms. Clay testified that the .22 rifle had belonged to her father-in-law and was given to her when he died. To rebut this testimony, the government proved that Ms. Clay's father-in-law died on March 31, 1987. The government then called Rob Yates who testified that he had purchased the .22 rifle in question and it had remained in his possession until November 7, 1989, at which time it was stolen from his apartment.
 
 
 7
 On December 4, 1991, the jury returned a verdict of guilty. At the sentencing hearing held on August 5, 1992, the District Court found that defendant was subject to the ACCA and sentenced him to a term of 210 months imprisonment. This timely appeal followed.
 
 II. Justification Defense
 
 8
 According to the defendant's version of the facts, as adduced by his own testimony and that of Thelma Clay, it was Ms. Clay who, sometime during the couple's altercation, brought the .22 rifle out of the bedroom in an effort to get defendant to leave her home. The defendant then wrestled with Clay, took the rifle away from her, and "hid" the gun in one of the bedrooms. Pursuant to these events, defendant requested that the District Court instruct the jury on the defense of justification. Although 18 U.S.C. Sec. 922(g) states only that "it shall be unlawful" for a felon to possess a firearm, this Court has recognized a justification defense. United States v. Crawford, 982 F.2d 199 (6th Cir.1993). Such defense may be asserted by a defendant if he can establish the following four elements:
 
 
 9
 (1) the defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury" ...;
 
 
 10
 (2) that defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct]" ...;
 
 
 11
 (3) that defendant had no "reasonable legal alternative to violating the law" ...; and
 
 
 12
 (4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm."
 
 
 13
 United States v. Singleton, 902 F.2d 471, 472 (6th Cir.) (citations omitted) (quoting United States v. Gant, 691 F.2d 1159, 1162-63 (5th Cir.1982)), cert. denied, 498 U.S. 872 (1990). The justification defense for possession of a firearm by a felon is to be construed very narrowly. Singleton, 902 F.2d at 472. Additionally, defendant must satisfy all four elements.
 
 
 14
 It is clear from a review of defendant's version of the facts that he has failed to sustain his burden of producing sufficient evidence to warrant an instruction to the jury on the defense of justification. Defendant testified that he knew, based upon having lived with Ms. Clay for several years, that she would not do any physical harm to him. Joint App. at 130. Defendant may arguably meet this first requirement by his testimony that he feared she would discharge the gun accidentally since she was unfamiliar with guns, thus there was some basis to find he had a "well grounded apprehension of death or serious bodily injury" when he took possession of the firearm. Defendant, however, fails the second test. It is clear that defendant "recklessly or negligently placed himself in a situation in which it was probable he would be forced to choose the criminal conduct," when he broke into the home of his ex-girlfriend in the middle of the night, refused to leave when it was obvious she did not want him there, and ultimately beat her up.
 
 
 15
 Even assuming, arguendo, that the District Court erred in refusing to instruct the jury on the defense of justification, such error was harmless. Ms. Clay's statement at the time of the incident was that defendant had fired shots at her. The 911 operator testified that she heard defendant tell Clay "I'll blow your head off." Lt. Leatherwood testified that, shortly after defendant's arrest, defendant told him that "he wasn't shooting at his girlfriend, [he was] just shooting at the side of her to scare her." Additionally, the evidence adduced at trial further established that the gun possessed by defendant was not acquired by Thelma Clay in the manner in which she claimed. The District Court's failure to instruct the jury on the defense of justification did not "affect [defendant's] substantial rights." Fed.R.Crim.P. 52(a).
 
 III. Failure to Give Miranda Warnings
 
 16
 Shortly after his arrest, defendant told Lt. Leatherwood of the sheriff's department that "he wasn't shooting at his girlfriend, [he was] just shooting at the side of her to scare her." Joint App. at 87. Defendant contends that this statement should have been suppressed because it was obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). This Court must first consider whether defendant raised the Miranda issue before the District Court so as to preserve it for appeal. Rule 12(b)(3) of the Federal Rules of Criminal Procedure provides that motions to suppress evidence must be raised prior to trial. This Court has repeatedly held that failure to file a timely motion to suppress constitutes waiver, and thus, an appellate court is without jurisdiction to consider the issue. United States v. Crimson, 905 F.2d 966 (6th Cir.1990); United States v. Oldfield, 859 F.2d 392 (6th Cir.1988); United States v. Sachs, 801 F.2d 839 (6th Cir.1986). While defendant never made a motion to suppress the evidence on grounds that he never received Miranda warnings, he did raise the issue at trial, and therefore, this Court can entertain the issue. See Crimson, 905 F.2d at 969; United States v. Cassity, 631 F.2d 461, 465 (6th Cir.1980) (where the underlying policy of Rule 12(b)(3) is not implicated, "its technical requirements should not be allowed to prevail over constitutional rights").
 
 
 17
 After Lt. Leatherwood's direct testimony (regarding the statement made to him by defendant), defense counsel requested a bench conference wherein she objected to the admission of the statement since Lt. Leatherwood had not testified that he advised defendant of his Miranda rights. The District Court denied the objection but requested the government to call the witness who actually advised defendant of his Miranda rights. Thereafter, the government called Officer Richard Nelson who testified that after defendant was placed in custody, he advised him of his Miranda rights. Officer Nelson further testified that he told Lt. Leatherwood defendant had been so advised prior to Leatherwood's talking with defendant. The District Court credited this testimony. Accordingly, defendant's contention that he did not receive adequate Miranda warnings is without merit.
 
 IV. Failure to Admit Surrebuttal Testimony
 
 18
 During trial, defendant's theory of the case was that he only innocently and briefly possessed the rifle when he wrestled it away from Thelma Clay. The government's theory, however, was that defendant brought the .22 rifle into Ms. Clay's house and used it to terrorize her by firing it in her direction. In support of the defense, Thelma Clay testified that the .22 rifle in question belonged to her father-in-law and had been given to her upon his death on March 31, 1987. To rebut this evidence, the government called Rob Yates who testified that he had purchased the .22 rifle and it remained in his possession until November 7, 1989, at which time it was stolen from his apartment. Thereafter, the defense requested permission to call a surrebuttal witness. This witness was a custodian of records for the Memphis Police Department who was prepared to testify that a search of the files showed no written police report regarding the theft of the rifle. The District Court declined to let this witness testify before the jury. The court determined that the government had not raised new matters in its rebuttal and that, in any event, the proffered testimony did not add "anything of substance to this case."
 
 
 19
 This Court reviews a district court's rulings on the admission or exclusion of surrebuttal evidence for abuse of discretion. See Martin v. Weaver, 666 F.2d 1013 (6th Cir.1981), cert. denied, 456 U.S. 962 (1982) (noting that the trial court has broad discretion to determine the scope of rebuttal testimony); United States v. Butcher, 926 F.2d 811, 817 (9th Cir.), cert. denied, 111 S.Ct. 2273 (1991); United States v. Moody, 903 F.2d 321, 330 (5th Cir.1990). The case law makes clear that surrebuttal is merited where (1) the government's rebuttal testimony raises a new issue, which broadens the scope of the government's case, and (2) the defense's proffered surrebuttal testimony is not tangential, but capable of discrediting the essence of the government's rebuttal testimony. Moody, 903 F.2d at 331; United States v. King, 879 F.2d 137, 138 (4th Cir.), cert. denied, 493 U.S. 900 (1989). Whether the rebuttal evidence was a new matter is also left within the discretion of the trial judge. King, 879 F.2d at 138. Here, the District Court did not abuse its discretion. The surrebuttal testimony, if admitted, would not have discredited Yates' testimony. The absence of a police report does not establish that the burglary never occurred (it is just as likely the burglary occurred but for some reason was never reported). Additionally, defense counsel could have cross-examined Yates regarding his alleged failure to file a police report. Thus, the District Court did not err in refusing to allow defendant's proffered surrebuttal.
 
 V. Predicate Felonies Listed in Indictment
 
 20
 The defendant next contends that the District Court erred in not giving the jury a limiting instruction regarding the multiple predicate felonies set forth in the indictment. Count One of the Indictment reads:
 
 
 21
 On or about the 22nd day of November, 1990, in the Western District of Tennessee, MELVIN TURNER having been convicted of crimes punishable by a term of imprisonment exceeding one year, that is:
 
 
 22
 1. Third Degree Burglary ... in the Criminal Court of Shelby County, Tennessee, on March 17, 1971,
 
 
 23
 2. Petit Larceny; Receiving and Concealing Stolen Property; ... in the Criminal Court of Shelby County, Tennessee, on March 17, 1971,
 
 
 24
 3. Fraudulent Use of a Credit Card ... in the Criminal Court of Shelby County, Tennessee, on March 17, 1971,
 
 
 25
 4. Attempt to Commit a Felony; to wit Burglary Third Degree ... in the Criminal Court of Shelby County, Tennessee, on March 17, 1971,
 
 
 26
 5. Burglary Second Degree in the Criminal Court of Shelby County, Tennessee, on June 3, 1974,
 
 
 27
 6. Robbery with a Deadly Weapon in the Criminal Court of Shelby County, Tennessee on March 30, 1983,
 
 
 28
 did knowingly possess and receive a firearm which had been shipped and transported in interstate commerce, that is a .22 caliber rifle, in violation of Title 18 United States Code Section 922(g).
 
 
 29
 Joint App. at A1-A2. Defendant argues that it was grossly prejudicial to include six felonies as it was only necessary for the government to prove one prior violent felony conviction to make out a case under section 922(g).
 
 
 30
 This Court has held, however, that in a "felon in possession" case, the indictment may charge more than one felony conviction and the government is not limited to establishing only a single conviction. United States v. Ford, 872 F.2d 1231 (6th Cir.1989) (government entitled to prove more than one prior violent conviction as predicate crimes for conviction under felon in possession count), cert. denied, 495 U.S. 918 (1990); United States v. Burkhart, 545 F.2d 14, 15 (6th Cir.1976) (government not limited to proving only one prior felony conviction under the former 18 U.S.C. App. Sec. 1202(a)(1), which prohibited the possession of a firearm by a person who had one previous felony conviction); United States v. Fields, 500 F.2d 69 (6th Cir.), cert. denied, 419 U.S. 1071 (1974) (same). Therefore, "since the government was entitled to prove more than one violent felony conviction as a predicate to conviction under Count I, it would be speculation to conclude that proof of [six] such convictions was likely to make a difference to the jury." Ford, 872 F.2d at 1238. Accordingly, proof of the prior felony convictions does not constitute reversible error. Id.
 
 
 31
 Under this same rationale, it was not error for the District Court to fail to give the jury a limiting instruction. Pursuant to Fed.R.Evid. 105, "the court, upon request shall restrict the evidence to its proper scope and instruct the jury accordingly." In the case at issue, any objection to the lack of a limiting instruction was waived by the defendant's failure to make a timely request for such an instruction. United States v. Christian, 786 F.2d 203, 213 (6th Cir.1986). In Christian, this Court stated that:
 
 
 32
 "[A]n improper jury instruction will rarely justify reversal of a criminal conviction when no objection has been made at trial, ... and an omitted or incomplete instruction is even less likely to justify reversal, since such an instruction is not as prejudicial as a misstatement of law." United States v. Hook, 781 F.2d 1166, 1173 (6th Cir.1986). Accordingly, we can reverse only for plain error affecting substantial rights. Fed.R.Crim.P. 52(b).
 
 
 33
 Id. at 213-14. At least one Court has recognized that in a "felon in possession" case, a district court's failure to give a limiting instruction (directing the jury not to consider a defendant's prior criminal record as evidence of guilt) on its own motion was not plain error cognizable under Rule 52(b). See United States v. Smith, 520 F.2d 544.549 (8th Cir.1975), cert. denied, 429 U.S. 925 (1976). Here, the District Court's charge as a whole made it clear to the jury that the defendant was on trial for his possession of a firearm on November 22, 1990, and not because of his bad character or any general propensity to commit crimes. TR. at 314-331. Even the government told the jury, in its closing argument, that "you can't use [defendant's] prior convictions to say that just because he committed these six crimes [that] he committed this crime that he's charged with today...." TR. at 289-90. Under the circumstances of this case, the District Court's failure to give sua sponte a curative instruction does not rise to the level of plain error.[3]
 
 
 34
 VI. Sentencing Under the Armed Career Criminal Act
 
 
 35
 A. Constitutional Validity of State Convictions
 
 
 36
 The District Court sentenced the defendant as an Armed Career Criminal under 18 U.S.C. Sec. 924(e) because defendant had been convicted of violating 18 U.S.C. Sec. 922(g) and had previously been convicted of three (3) violent felonies in Tennessee (Third Degree Burglary in 1971, Second Degree Burglary in 1974, and Conspiracy to Commit Robbery with a Deadly Weapon in 1983) and one (1) violent felony in Arkansas (Burglary in 1975). Defendant now contests (for the first time) the constitutional validity of several of the prior state convictions upon which the government relied in seeking enhancement of defendant's sentence under section 924(e). Specifically, defendant argues that the government failed to adduce sufficient proof to show that his prior burglary convictions were obtained with the full protection of the safe-guards required by Boykin v. Alabama, 395 U.S. 238 (1969), "insofar as that case requires a showing that defendant's guilty pleas were knowingly made after a voluntary waiver of his rights." United States v. Warren, 973 F.2d 1304, 1309 (6th Cir.1992).
 
 
 37
 In United States v. Hoffman, 982 F.2d 187 (6th Cir.1992), this Court "adopt[ed] the view of the Second, Fifth, Eleventh, and Ninth Circuits that it is within a district court's discretion to determine whether a defendant may collaterally attack the use of prior convictions at sentencing where the defendant has not previously challenged the convictions." Id. at 190. Because the District Court exercised its discretion in considering defendant's challenges to his prior convictions, under the procedure endorsed by Hoffman this Court must now determine whether the court properly ruled that defendant failed to meet his burden of showing that his prior convictions are constitutionally invalid. Id. at 191.
 
 
 38
 Section 924(e) mandates an enhanced sentence of not less than 15 years for a defendant who has three prior convictions for a violent felony or serious drug offense. 18 U.S.C. Sec. 924(e). For the conviction to count for enhancement purposes, it must have been constitutionally obtained. United States v. Gallman, 907 F.2d 639, 642 (7th Cir.1990), cert. denied, 111 S.Ct. 1110 (1991) (citing United States v. Sullivan, 897 F.2d 530 (6th Cir.1990) (unpublished order)). A conviction pursuant to a guilty plea that is not voluntarily and intelligently given is not constitutionally obtained. Boykin, 395 U.S. 238.
 
 
 39
 To establish the validity of defendant's 1971 Third Degree Burglary Conviction and 1974 Second Degree Burglary Conviction, the government introduced (through the deputy clerk and custodian of records in the Shelby County, Tennessee Criminal Clerk's office) petitions for "waiver of trial by jury and request for the acceptance of a plea of guilty," that were signed by the defendant. The deputy clerk also testified that these "petitions for waiver" are commonly found in the criminal court files from the 1970's and that they have to be signed in front of the judge before he will accept the guilty plea. Sent. Hrg. at 17-18. The government also introduced a transcript regarding the 1974 conviction.
 
 
 40
 This Court has held that "once the government adduces documentary evidence that a defendant properly waived his rights, the burden shifts to the defendant to prove 'that his convictions were in fact not constitutionally sound.' " Warren, 973 F.2d at 1310 (quoting United States v. Taylor, 882 F.2d 1018, 1031 (6th Cir.1989), cert. denied, 496 U.S. 907 (1990)). See also Parke v. Raley, 113 S.Ct. 517, 524 (1992) ("even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant").
 
 
 41
 In the case at hand, the District Court found that the government satisfied its burden by introducing the waiver of rights forms. This documentary proof was strong enough to shift to defendant the burden of proving his convictions were in fact not constitutionally sound. Defendant failed to meet that burden, introducing only his own self-serving testimony (that to the best of his recollection he was never informed of the rights he was waiving by pleading guilty) to support his contention that his guilty pleas were constitutionally infirm. Accordingly, defendant's two prior Tennessee convictions for Burglary, as well as his 1983 jury conviction for Conspiracy to Commit Robbery (the validity of which defendant does not contest) were properly used by the District Court to sentence defendant as an armed career criminal. It is therefore unnecessary for the Court to consider defendant's challenge to his Arkansas conviction.
 
 B. 1971 Tennessee Burglary Conviction
 
 42
 Defendant contends that the District Court erred in considering his 1971 burglary conviction as one of the predicate felonies for enhancement of sentencing under section 924(e) because this conviction was over 15 years old and therefore "ancient" and "stale." This argument lacks merit under the plain language of section 924(e). That section places no restriction on how recent prior convictions for violent felonies must be in order to be considered for enhancing a defendant's sentence under the Act. United States v. Preston, 910 F.2d 81, 89 (3d Cir.1990), cert. denied, 498 U.S. 1103 (1991). As this Court has stated:
 
 
 43
 When the statutory criteria of Sec. 924(e) are met, the section provides for a statutory minimum penalty of fifteen years. Although the Sentencing Guidelines may restrict the sentencing court's consideration of certain past offenses, Sec. 924(e) does not.
 
 
 44
 United States v. Moreno, 933 F.2d 362, 373 (6th Cir.) (citation omitted and emphasis added), cert. denied, 112 S.Ct. 265 (1991). Because Moreno is controlling, we reject defendant's argument on this issue. See Salmi v. Secretary of Health and Human Services, 774 F.2d 685, 689 (6th Cir.1985) (recognizing that one Panel of the Court cannot overrule the decision of an earlier Panel).
 
 C. Cruel and Unusual Punishment
 
 45
 Defendant also contends that his 210-month sentence under the ACCA constitutes cruel and unusual punishment in violation of the Eight Amendment. This Court has already held, however, that sentences under the ACCA do not violate the Eight Amendment's proscription of cruel and unusual punishment. United States v. Warren, 973 F.2d 1304, 1311 (6th Cir.1992); United States v. Pedigo, 879 F.2d 1315, 1320 (6th Cir.1989). Defendant's 210-month sentence is "not an extreme sentence, nor is it grossly disproportionate to the series of crimes that earned it for him." Warren, 973 F.2d at 1311.
 
 VII. Ineffective Assistance of Counsel
 
 46
 Defendant next alleges that he was deprived of his right to effective assistance of counsel because his trial counsel (1) failed to request a downward departure from the sentence imposed under the ACCA and (2) failed to make a motion to strike defendant's 1971 conviction for Attempt to Commit a Felony, to wit, burglary, from the indictment. Defendant did not make this claim to the District Court. It is well settled that:
 
 
 47
 As a general rule, we will not review an ineffective assistance of counsel claim raised for the first time on appeal. Ineffective assistance of counsel claims are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. Sec. 2255 so that the parties can develop an adequate record on the issue. We will consider an ineffective assistance of counsel claim on direct appeal only when the record is adequate to assess the merits of the defendant's allegations.
 
 
 48
 United States v. Daniel, 956 F.2d 540, 543 (6th Cir.1992) (citations omitted). In this case, because defendant raises his ineffective assistance of counsel claim for the first time on appeal and the record is inadequate to assess the merits of his claim, we will not review it.
 
 VIII.
 
 49
 For the aforementioned reasons, defendant's conviction and sentence are AFFIRMED.
 
 
 
 [1]
 18 U.S.C. Sec. 922(g)(1) provides in pertinent part:
 It shall be unlawful for any person--who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition....
 
 
 [2]
 18 U.S.C. Sec. 924(e)(1) provides, in pertinent part:
 In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years....
 
 
 [3]
 Defendant also contends that the indictment, which erroneously listed one of defendant's prior felony convictions as "Robbery with a Deadly Weapon" instead of "Conspiracy to Commit Robbery With a Deadly Weapon," misled the jury and prejudiced the defendant. However, the government made it clear to the jury (during its opening and closing arguments and on direct examination) that defendant had previously been convicted of conspiracy to commit robbery with a deadly weapon and not the substantive offense itself