**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0166n.06
Filed: March 1, 2007

No. 06-3610

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| STEPHEN MICHAEL MOBLEY, JR., ROBERT ANTHONY STONEROCK, KELLY MOBLEY, and BOBBIE STONEROCK, | ) ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE SOUTHERN DISTRICT OF OHIO |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, | ) ) ) | |
| Defendant-Appellee. | ) | |

_____

BEFORE: MERRITT, DAUGHTREY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiffs Stephen Michael Mobley, Robert Anthony Stonerock, Kelly Mobley, and Bobbie

Stonerock[1] ("plaintiffs") appeal the district court's grant of summary judgment in favor of defendant

---

[1]The district court properly noted that, although the parties' filings at both the trial and appellate levels list Mobley and Stonerock as "d/b/a First Fitness of America, Inc." and "d/b/a World Gym, et al.," no such allegations were made in the body of the complaint. Likewise, the notice of appeal lists only the individual plaintiffs, not the companies, and the case is docketed as such in the Sixth Circuit.

Furthermore, despite the fact that Kelly Mobley and Bobbie Stonerock are listed as plaintiffs-appellants on the Sixth Circuit docket sheet, the claim directly involving the two – loss of consortium – was dismissed by the district court and has not been appealed. Thus, despite the liberal use of the terms "Plaintiffs" upon appeal, it appears that they are unnecessary parties to

Philadelphia Indemnity Insurance Company ("Philadelphia"). Plaintiffs initially brought suit for damages arising from Philadelphia's refusal to pay pursuant to a fire insurance policy after two arson attacks on a gym owned by Mobley and Stonerock. The district court granted summary judgment in favor of Philadelphia after it brought a motion for indemnity based on its assertion that plaintiffs failed to abide by the cooperation clause of the insurance contract. Plaintiffs timely appealed and now urge this court to reverse the grant of summary judgment in favor of Philadelphia.

For the reasons set forth below, we affirm.

I.

This appeal arises from a fire insurance policy contract issued by Philadelphia to "First Fitness of America, Inc., dba World Gym," in Huber Heights, Ohio. Plaintiffs operated the business known as First Fitness of America, Inc., which, in turn, operated a World's Gym facility in Dayton, Ohio. Stephen Mobley and Robert Stonerock had purchased the commercial policy from defendant Philadelphia to provide coverage for personal property losses and business interruption loss for causes including fire.

According to the provisions of the policy, plaintiffs could recover business interruption losses with extra expenses up to $300,000. Lost business income was to be computed as "Net Income (Net Profit or Loss before Income Taxes) that would have been earned or incurred; and . . . . Continuing normal operating expenses incurred, including payroll." Extra expense coverage meant that

---

this appeal. Thus, "Mobley" or "Stonerock" will refer to Stephen Mobley and Robert Stonerock.

Philadelphia would pay "to continue operations . . . at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location." The policy further dictated plaintiffs' obligations in the event of a business interruption loss. Specifically, the policy stated that plaintiffs must "[c]ooperate . . . in the investigation or settlement of the claim." "Cooperation" included allowing "[a]s often as may be reasonably required . . . [Philadelphia] to inspect the property proving the loss or damage and examine your books and records." Finally, the policy dictated that Philadelphia "may examine any insured under oath, while not in the presence of any other insured and at such time as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records." As a result of two arson attacks in July 2003, fire, smoke, and water destroyed major portions of the structure and all of the exercise equipment within it. Following the fires, plaintiffs submitted their property claims to Philadelphia. Plaintiffs concede that Philadelphia's adjuster, James Stewart, "timely and adequately" investigated the property loss claim, and defendant eventually paid the property claim. By December 2003, Philadelphia had paid plaintiffs $399,058.78 for property losses.

This litigation, however, stems from the difficulties computing the amount owed for business interruption loss. Mobley and Stonerock claim that they were unable to operate the gym for nine and one-half months. Plaintiffs informed Philadelphia of this difficulty. Philadelphia requested that plaintiffs facilitate membership at competing gyms, promising to reimburse plaintiffs. Plaintiffs claim to have done so at a cost of $90,000, but, as the district court noted, only produced a $1,500

check and a $1,500 receipt to substantiate this claim, a finding that the plaintiffs do not challenge on appeal.

In September 2003, Kevin Liney, the Senior Property Specialist for Philadelphia, retained a CPA, Daniel Wright, to evaluate any claim submitted by plaintiffs for the loss of business income as a result of the two fires. On October 9, November 5, and December 5, 2003, and again on January 5, 2004, Wright's firm sent letters to Mobley, one of the owners of First Fitness, listing the categories of records that would allow the accountants to evaluate any business interruption claim and requesting that Mobley telephone Wright's office to discuss what records plaintiffs possessed. Mobley, however, never called. Three months after the initial request, Wright's firm received unsigned copies of federal income tax returns for the years 1998, 1999, 2000, and 2001 (which returns showed an address of 201 East Second Street, Franklin, Ohio, a different address than any on file), as well as copies of a number of "Membership Agreements" entered into by First Fitness with its customers and several other documents. Also, on January 14, 2003, Liney received from Mobley a two-page document setting forth "figures of our Accounts Payable and loss of income from July 11, 2003 till January 11, 2004," the six-month period after the fire. Liney forwarded this document on to Wright. Liney then sent Mobley an "advance payment" of $10,000 with respect to First Fitness's business income loss.

The two-page document from Mobley contained several estimates of "membership sales" and other sales that First Fitness claimed that it would have had during the six-month period from July 11, 2003, to January 11, 2004. It also set forth, in round numbers, amounts that would have

been expended during that period for rent, utilities, telephone service, advertising franchise fees, and "fees for existing member[s] to attend other clubs: 4 clubs @ $3,000 per club." After receiving this document, Wright telephoned Mobley and reiterated his request that he be given an opportunity to examine the financial records described in his firm's December 5, 2003, letter. In addition, he asked Mobley questions about items in the two-page document. In answer to one of those questions, Mobley told Wright that three of the four "other clubs" that First Fitness's members had been supposedly using since the fire (and to which First Fitness was therefore paying fees) were "Premier Fitness Centers" in Centerville, Kettering, and Huber Heights. However, upon checking various directories, Wright could find no Premier Fitness Center in Centerville or Kettering, and the Huber Heights location turned out to be the previous address of Mobley's "First Fitness of America," as shown on the policy of insurance, and from which First Fitness had moved shortly before the fires.

Nevertheless, Liney asked Wright to prepare a preliminary calculation of First Fitness's business income loss. Liney recognized that all Wright had to go on were the federal tax returns for 2001, 2000, 1999, and 1998, which returns ostensibly reflected the experience of the business more than a year and a half before the fire, at a different location and under different ownership. Wright therefore relied on the revenue and expense figures set forth in the 2001 tax return to make a "preliminary and tentative" calculation of First Fitness's loss during the six-month period of interruption claimed by First Fitness. On January 29, 2004, Wright sent that "preliminary and tentative" report to Liney. In the report, Wright highlighted that, in order for him to arrive at a less

5

tentative and more accurate projection, he would need to examine financial records of First Fitness that showed the business's income and expenses in the years 2002 and 2003.

Liney immediately sent a copy of Wright's report to Mobley. In his covering note, Liney stated that Philadelphia was unable to make any final analysis of First Fitness's business loss without further documentation. This message was reiterated in letters sent to Mobley on February 3, 2004, and again on February 26, 2004, listing the types of records that would be helpful and suggesting that a "meeting may be most beneficial for all parties involved to discuss the types of information that will help us in the evaluation of your claim."

On February 24, 2004, Mobley indirectly responded to these communications by sending Liney a copy of a federal income tax return for First Fitness for the year 2002.[2] That unsigned document stated that it had been prepared by Tax Centers of America, Xenia, Ohio, on February 20, 2004. Mobley also sent Liney a copy of a cover letter from Tax Centers of America, dated February 20, 2004, and addressed not to either of the World Gym addresses, but to "First Fitness of America, Inc., 2853 Northlawn Avenue, Dayton, Ohio." The cover letter stated that the return had been "based on the information you [First Fitness] provided." Liney forwarded a copy of the purported 2002 tax return to Wright, who then sent a sixth letter reiterating the contents of the February 3 letter.

---

[2]The district court correctly notes that both Liney's and Wright's affidavits appear to alternately confuse the years 2002 and 2004.

According to Philadelphia, several aspects of these documents caused Wright to question their veracity. While the cover letter claimed that the return was based upon information supplied by First Fitness, plaintiffs had not been able to provide to Wright documents that would support the result. Upon examination, Wright found that the submitted corporate balance sheet of 2002 was virtually identical to the corporate balance sheet for the 2001 return.

Two and a half weeks later, on March 15, 2004, plaintiffs notified Liney that they had engaged counsel. Philadelphia did likewise, and counsel passed the months of March and April 2004 exchanging letters threatening suit and requesting documentation of financial loss. On May 27, 2004, Philadelphia's attorney sent plaintiffs' counsel a letter, demanding that, pursuant to the provisions of the policy, Mobley submit to an examination under oath in Dayton on June 17, 2004, specifying the time and place of the examination. The letter further demanded that Mobley bring to the examination under oath the following documents:

a.   All bank statements of First Fitness (dba World Gym) for the years 2002 and 2003, and the first three months of 2004;

b.   All records evidencing actual income and revenues received by First Fitness (dba World Gym) on each business day in the years 2002, 2003 and in the first three months of 2004;

c.   All records showing expenses incurred by First Fitness during the years 2002, 2003 and the first three months of 2004;

d.   All records delivered to Tax Centers of America in connection with the preparation of the corporation's income tax return for the years 2002 and 2003;

e.   All profit and loss statements prepared for First Fitness during the years 2002, 2003 and 2004 (to date);

  f.  General ledger for the years 2002 and 2003 and the first three months of 2004.

On June 14, 2004, plaintiffs' counsel telephoned to say that the examination under oath had to be postponed because he had to be in federal court on June 17. The next day, defense counsel sent a letter rescheduling Mobley's examination under oath for July 1, 2004. On June 30, 2004, plaintiffs' attorney sent a fax informing Philadelphia that a suit had been filed against Philadelphia, and, therefore, the examination under oath scheduled by Karp would not be going forward.

The complaint filed on June 29, 2004, in district court asserted five causes of action and named as plaintiffs "Stephen Michael Mobley, Jr., DBA First Fitness of America, Inc. DBA World Gym"; his wife, Kelly Mobley; "Robert Anthony Stonerock DBA First Fitness of America, Inc. DBA World Gym"; and his wife, Bobbie Stonerock. Defendants were Philadelphia Indemnity Insurance Company and Kinker-Everleigh Insurance Agency, who was later dismissed. Plaintiffs' complaint alleged that Philadelphia: (1) "arbitrarily and capriciously breached their obligations under the policy and refused to pay the Plaintiff[]s the amounts owed by their insurance company"; and (2) negligently failed to process the claim in good faith. The complaint sought: (1) a request for a judicial determination of plaintiffs' rights; (2) punitive damages for Philadelphia's alleged breach of a duty of good faith; and (3) damages arising from the alleged severe emotional distress and loss of consortium as a result of the breach.

Philadelphia thereafter moved for summary judgment on all counts, which the district court granted, holding: (1) because plaintiffs failed to comply with the conditions precedent to having a right to recover, specifically by virtue of refusing an examination under oath, Philadelphia was

permitted to refuse plaintiffs' business income loss claim; (2) plaintiffs had failed to establish a genuine issue of material fact as to the condition precedent to having a right to payment on the insurance contract; (3) Philadelphia had a reasonable justification for refusing to pay the claim, and, therefore, the alleged bad faith claim was not cognizable; (4) Philadelphia fulfilled its duty to investigate, therefore the severe emotional distress claim was not cognizable; and (5) plaintiffs had proffered no evidence supporting their loss of consortium claim.

On appeal, plaintiffs have asserted two premises, both of which, they contend, require reversal. First, they assert that Philadelphia's request for an examination was legally insufficient. Second, plaintiffs contend that they proffered all supporting documentation in their possession. Neither of these arguments has merit, and, accordingly, we affirm.

## II.

First, plaintiffs contend that their actions should not be deemed a "failure to cooperate" when Mobley never attended an examination under oath because the request was never sent to Mobley, but only his counsel. Specifically, plaintiffs assert that, under *Weber v. General Acc. Fire & Life Assurance Corporation*, 462 N.E.2d 422 (Ohio Ct. App. 1983), insurance companies must directly inform not only the insured's counsel, but inform the insured directly, that an examination under oath is required. Because Philadelphia directed its request to only plaintiffs' counsel, they contend that the request was invalid.

Philadelphia argues persuasively that plaintiffs' argument is untenable for several reasons. First, an argument that Mobley never had notice of Philadelphia's request for an examination is

unsupported by plaintiffs' briefs. Plaintiffs concede that the first examination did not take place because of a conflict with plaintiffs' counsel, then state that the examination was never rescheduled, even though Mobley had informed Philadelphia that he was "willing and eager to submit to such an examination." This assertion has no support in the record and flatly contradicts the argument that the condition precedent to the contract was invalid because Mobley lacked notice.

Second, the argument is not preserved. Mobley did not advance the argument that his failure to submit to an examination was due to a lack of notice in the district court and brings it up for the first time on appeal. *United States v. Crismon*, 905 F.2d 966, 969 (6th Cir. 1990) ("[O]bjections that appear for the first time on appeal are conclusively deemed to be waived, with the effect that we are deprived of jurisdiction."). Nor is the argument that Mobley's attorney did not inform him of the scheduled examination supported by the record. The communications from Mobley's attorney reference his communication with his client.

Finally, the *Weber* case relied upon by plaintiffs is distinguishable from the present case. *Weber* held that an insurance company had "waived" compliance with an examination under oath provision where it made a general statement demanding one and directed the request only to the insured's attorney, providing no notice or specificity to the insured. *Weber*, 462 N.E.2d at 424-25. The *Weber* court stated:

> [A]ppellee's request for a sworn examination is not reasonably specific. The "demand" is couched in precatory language and appears to shift to appellant the responsibility of arranging the details of his examination. To be legally sufficient, a demand by the insurer that the insured submit to an examination under oath must specifically designate the time and place of the examination and the person before whom the examination is to be conducted. If the demand lacks such definiteness, in

an action on the policy by the insured, the defense that the insured failed to submit
to a sworn examination is unavailable to the insurer.

*Id.* at 424 (footnotes and internal citations omitted). Philadelphia contends correctly that it complied precisely with the quoted language, designating a time, place, and conducting person of the examination on both occasions. Further, Philadelphia asserts that it did not err by sending the notice to plaintiffs' attorney after it received specific instructions to "contact [the attorney's] office" if it had any questions regarding the claim. We agree.

III.

Second, plaintiffs contend that because they "delivered all documentation it possessed to support its business interruption loss claim," they fulfilled their duty pursuant to the insurance contract requiring World Gym to "permit" Philadelphia to examine its books and records and "cooperate." Primarily, plaintiffs contend that they were not in possession of the books and records because they allegedly burned in the fire. Thus, plaintiffs claim they cooperated to the best of their ability.

The district court correctly held:

Generally, an insured's failure to cooperate may be raised by the insurer as a defense to liability. *Gabor v. State Farm Mut. Auto Ins. Co.*, 583 N.E.2d 1041 (Ohio App. 1990). . . . When such cooperation is a policy condition, and an insured fails to comply, the insurer may be relieved of further obligation with respect to a claim with which the insured did not cooperate. *Gabor*, 583 N.E.2d at 1043. When an insurance company demands information, the policyholder is "required to make a fair and frank disclosure of information demanded by the company." *Id.* In the instant case [the] policy contains cooperation clauses requiring that the insured "cooperate *** in the investigation or settlement of the claim." This cooperation included allowing "[a]s often as may be reasonably required, permit[ting Philadelphia Indemnity] to inspect the property proving the loss or damage and examine your

11

books and records." Additionally, the policy allowed that Philadelphia Indemnity "may examine any insured under oath, while not in the presence of any other insured and at such time as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records."

. . . .

In the instant case, Plaintiffs did not submit documents such as utility bills for the twelve months prior to the fire that would have allowed Philadelphia Indemnity to determine Plaintiffs' business income loss. As Defendant asserts, these statements could certainly have been obtained from the utilities, even if the originals were destroyed in the fire. . . . .

When arson is involved, however, an insurance company has a heightened right to financial documentation and to examinations under oath. [*Gabor*, 583 N.E.2d at 1044.] When an insurer's investigation indicates that arson is a possible cause of fire damage, the policyholder's failure to provide the insurer with pertinent financial information may void a policy for breach of the cooperation clause. Compliance with some of the policy's conditions precedent does not excuse failure to comply with all of the conditions precedent. See e.g., *Walker v. Buck*, 621 N.E.2d 1307, 1309 (Ohio 1993) ("A party claiming insurance coverage has the burden of establishing compliance with all provisions of the insurance policy which are precedent to his right to recover . . . ."). Because Plaintiffs failed to comply with the conditions precedent to having a right to recover, at least by virtue of refusing an examination under oath, Philadelphia Indemnity was correct in refusing Plaintiffs' business income loss claim.

(Internal citations omitted.)

We find plaintiffs' arguments without merit, the district court's examination and analysis correct, and, accordingly, we affirm.

IV.

For the reasons stated above, the order of the district court is AFFIRMED.