**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gertie CRISMON, Defendant–Appellant.**

No. 89–6056.

United States Court of Appeals, Sixth Circuit.

Argued April 6, 1990.

Decided June 18, 1990.

W. Hickman Ewing, Jr., U.S. Atty., Timothy R. DiScenza, Asst. U.S. Atty., Van S. Vincent, argued, Memphis, for plaintiff-appellee.

Kemper B. Durand, argued, Thomason, Hendrix, Harvey, Johnson, Mitchell, Blanchard, W. Otis Higgs, Jr., Peete, Higgs & Armstrong, Memphis, for defendant-appellant.

Before MARTIN and JONES, Circuit Judges, and FEIKENS, Senior District Judge.[*]

PER CURIAM.

Defendant–Appellant, Gertie Crismon ("defendant"), was convicted of possession with intent to distribute cocaine and possession with intent to sell marijuana. She appeals, asserting essentially four errors: (1) failure to grant defendant's oral motion to suppress evidence obtained as the consequence of an arrest made without probable cause and/or coerced consent; (2) denial of defendant's motion for acquittal; (3) failure to prove guilt beyond a reasonable doubt; and (4) failure to grant a new trial warranted by erroneous jury charges and instructions that negated defendant's right to cross-examination. We affirm.

## I. BACKGROUND

On December 7, 1988, in Memphis, Tennessee, airport police officer Drake observed defendant arrive on a flight from Los Angeles, California. Defendant was observed going in and out of the baggage lobby door several times as if looking for someone. She claimed two suitcases and a garment bag. She was then observed to take a Sheraton Hotel shuttle to the airport Sheraton.

Officer Drake decided to follow her because he thought her behavior was suspicious and because he thought her attire—

---

[*] Honorable John Feikens, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

tennis shoes, a pair of jogging pants, and a coat—was unusual for a woman going to the Sheraton.

Officer Drake learned that she had checked in under the name of Chonte Larkins. The room had been paid for in cash and rented for one night. There was no Chonte Larkins on defendant's flight. In fact, defendant had flown under the name Jon Crismon.

Police set up a surveillance from a vacant room across the hallway from defendant. Nothing new came to the police's attention, but when a special agent arrived, they went to defendant's room and knocked on the door and asked to speak to her. She opened the door. The officers identified themselves as police and showed identification. They advised her that they were conducting an investigation and that they wished to talk with her. She let them in.

In the room, the police observed the three bags she had picked up at the airport. The police asked to search the luggage. Officer Drake told her,

If you do not feel comfortable about it, what we'll do is we'll go out and we'll call the dogs and we'll try to attain [sic] a search warrant.... What we'll do, we'll sit here and we'll wait until the dogs arrive and we'll conduct our business that way.

She asked how it would affect her if something were found in the luggage. The police offered her a consent form. They explained to her that she did not have to sign the form. She signed but wrote on the bottom that she did not understand it. The police told her that since she did not need to sign the form in the first place if she did not want to, she need not try to void her consent. She then crossed out and initialed the phrase that stated she did not understand.

The police then searched her luggage. One suitcase contained a garment bag, which itself contained women's clothing. That suitcase also contained a thermal bag with six, separately wrapped, one-kilogram packages of cocaine. The next suitcase contained a bag tag with the name "Krown" on it, a name also found on a letter in defendant's purse. In that suitcase, the police found a canvas bag containing eleven pounds of marijuana.

Her purse contained a Delta Frequent Flyer card in the name of Dean Crismon, a Citibank Visa in the name of Gertle Chrisman, a Goldwater's card in the name of Gertie Chrison, a Pacific Bell card in the name of Chonte Smith, and an Allstate Motor Club card in the name of Gertie Crisnon. Also there were an applicant's receipt for a California driver's license in the name of Jon Chrismon and a cashier's check in the name of Chonte Larkin. Drug notes were also in the purse, using the words "shoes" and "lady" to indicate cocaine.

It was undisputed that some of the luggage had apparently been delivered to baggage check-in at Los Angeles airport by someone other than defendant. She testified that her boyfriend had had the opportunity to put the drugs in the luggage without her knowledge.

During the trial, as soon as Officer Drake testified as to the subjective basis of probable cause, defendant's attorney objected. Defendant's attorney argued that no probable cause existed, and therefore that evidence flowing from the arrest should be suppressed. He also said, "[A]t the proper time I'm going to make an oral motion to contest the legality of the arrest and the search." We note that he never made such a motion.

The government argued that such motions must be made before trial. Defendant's attorney responded that he filed a pre-trial motion to suppress, but did not "pursue it." We note that the record is devoid of any such pre-trial motion. Nevertheless, defendant's counsel said, he had no opportunity to make a well-founded pre-trial motion, because he could not know, until the officer testified, that probable cause was deficient.

The district judge overruled the objection, stating that defendant's counsel could renew it later. He never did so. Moreover, we note that the record discloses no motion to suppress evidence based on the

circumstances under which defendant signed the consent form.

Later, defendant testified that she did not understand how she could consent to a search of the luggage on the basis that it was not hers. Consequently, the district judge gave a special instruction "14(a)," which read:

> Whether the search of the bags by law enforcement officers was proper is a question of law to be decided by the court and not by the jury. The question of whether a search was legal or illegal relates not to guilt or innocence of the defendant, but rather addresses itself to a constitutional issue.

At the close of the government's case, defendant moved for acquittal. The district judge denied this motion.

At the conclusion of the trial, the judge refused to grant defendant's request for a charge on the lesser included offense of simple possession.

## II. ANALYSIS

### A. *Motion to suppress*

Defendant claims that in order to establish probable cause for a stop detention or arrest, the burden is on the government to prove that there were constitutionally acceptable reasons for approaching and detaining the suspect from the very beginning. Here, defendant claims, there was no probable cause to follow, approach, and detain her, based merely on the fact that she was looking for someone and wore casual clothing while going to the Sheraton. Thus, defendant argues, the arrest was unlawful and evidence seized is fruit of the poisonous tree.

Accordingly, defendant argues, the oral motion to suppress should have been heard and granted, relying on *Agnello v. United States*, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1952). She contends that *Agnello* holds that since the right to be free of illegal search and seizure is so important, the

district court should dispense with the usual pre-trial motions requirement, where for want of knowledge of the illegality of the circumstances, the defendant has not heretofore had an opportunity to make such a motion.

The government contends that probable cause to arrest existed. It points to the facts that Officer Drake determined that defendant had checked into the hotel and flown under two different aliases, and that she had paid for the hotel, in advance, in cash.

But, the government continues, even assuming no probable cause, under Fed.R. Crim.P. 12(f), defendant waived her right to suppression by not making a timely motion under 12(b)(3). Even if the court had chosen to entertain the motion, defendant had nonetheless waived her right. More important, continues the government, the merits of an untimely motion under 12(b)(3) are not appealable under Sixth Circuit law, citing *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir.1988), and *United States v. Sachs*, 801 F.2d 839, 847 (6th Cir.1986).

In our opinion there was probable cause. Thus, there is no need to reach the suppression issue with regard to probable cause.

■ Defendant's next argument is made, for the first time, on appeal. Defendant argues that her consent was invalidated by duress and coercion, because under the circumstances, she believed that if she were not to consent, then she would be forcibly detained at least until the dogs had been brought to the hotel. She points as well to the officer's threat to obtain a warrant, and to his telling her that she had to cross out the remark that she "did not understand." She concludes that the officer's statement that he could obtain a warrant was a false representation that failure to cooperate would lead to detention, relying on *United States v. Cruz*, 701 F.Supp. 440 (S.D.N.Y. 1988)[1]. She argues that the prosecution

---

**1.** In *Cruz,* the agent told a suspect who refused to let him into her house that he could get a warrant in three minutes, when in fact he knew that he had insufficient probable cause for a warrant. The district court suppressed the evi-

dence obtained as pursuant to an invalid search, reasoning that the officer had effectively deprived the suspect of her belief that she could refuse to give consent, and that consent was

failed in its burden to show consent was voluntary. *See Cruz, id.* at 445, *citing, inter alia, Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

The government, relying on *Oldfield* and *Sachs,* asserts that she waived the suppression issue (Fed.R.Crim.P. 12(b)(3) and 12(f)) by not bringing a timely motion.

We agree. Since defendant never made a motion to suppress the evidence on the basis of coerced consent, this court is without jurisdiction to entertain this issue on appeal.

*Schneckloth* indeed holds that the government has an obligation to show voluntary consent. But in *Schneckloth,* unlike here, defendant requested suppression before a California state court, and a hearing was held. Here, the government offered the consent form, and consent was never formally challenged below. The government met its burden.

Had defendant raised this issue at trial, this court would have entertained the issue. *See United States v. Cassity,* 631 F.2d 461, 465 (6th Cir.1980) (underlying policy of Fed. R.Crim.P. 12(b)(3) not implicated, thus appellate relief from waiver granted in light of possible constitutional violation); *but see United States v. Worthington,* 698 F.2d 820, 823–24 (6th Cir.1983) (underlying policy of Fed.R.Crim.P. 12(b)(3) implicated, thus no appellate relief even in light of possible constitutional violation).

This is true despite our holding in *Sachs* that we are without jurisdiction to hear an appeal of a defendant who had moved, on the last day that testimony was to be taken, to suppress evidence procured through an allegedly illegal seizure, illegal arrest, or illegally-obtained consent. *Sachs* at 847 ("Since the defendant failed to timely file this motion to suppress, he waived these arguments and this court lacks *jurisdiction* to review their merits.") (emphasis

added). In light of *Cassity, Sachs'* language was overly inclusive.

■ Nevertheless, objections that appear for the first time on appeal are conclusively deemed to be waived, with the effect that we *are* deprived of jurisdiction. In this regard, more on point than *Oldfield* is *United States v. Woods,* 544 F.2d 242, 251 (6th Cir.1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977), 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed.2d 270 *reh'g denied,* 431 U.S. 960, 97 S.Ct. 2689, 53 L.Ed.2d 279 (1977). Both *Oldfield* and *Woods* involved a challenge to an indictment under Fed.R.Crim.P. 12(b)(2), rather than suppression of evidence under Fed.R. Crim.P. 12(b)(3). Still, doubly unlike *Oldfield, Woods* involved a constitutionally-based issue, also raised for the first time on appeal. This court stated, "[S]ince appellants failed to present this objection to the district court even after the close of the government's case, when the factual basis of their objection was apparent, we hold that they waived this objection under F.R. Crim.P. 12(f)." *Woods, id.*

We see no reason to distinguish *Woods* here. Rule 12(f) applies equally to Rule 12(b)(2) and Rule 12(b)(3). Rule 12(f) requires a defendant who seeks relief from either Rule 12(b)(2) or Rule 12(b)(3) first to show "good cause" to the district court. The district court is not under any obligation spontaneously to suppress evidence. Since the district court was never given the opportunity to exercise discretion, the district court cannot be said to have abused that discretion. Thus, under Rule 12(f), we hold that we are categorically without jurisdiction to hear appeals of suppression issues raised for the first time on appeal.[2]

Although we are troubled at defendant's strong suggestion that her consent was coerced, we cannot simply declare the consent to have been illegally obtained, for we cannot know what facts a suppression hearing would have adduced. *United*

given on the basis of a fraudulent representation.

**2.** While the appellants in *Cassity* never raised their objections below, we held that for efficiency reasons we would treat a co-defendant's motion below as applicable to all the others. Hence, *Cassity* accords with the rule we announce here.

*States v. Wood,* 609 F.2d 246, 248 (1979) *(per curiam)*[3]. Moreover, defendant has frustrated any option we may have had to remand for a suppression hearing, for as already intimated, her omission below to make a facial showing of the "good cause" required by Rule 12(f) has deprived us of jurisdiction.

### B. *Other grounds of appeal*

Upon careful consideration of the remaining issues, we hold them to be without merit.

### III. CONCLUSION

Accordingly, defendant's conviction is AFFIRMED.

---

**3.** This case is not to be confused with *United States v. Woods,* 544 F.2d 242 (6th Cir.1976).