**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0631n.06
Filed: August 29, 2007

**No. 06-5354**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GERALD WAYNE COLLIER,

    Defendant-Appellant.

                           /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY

BEFORE:    BOGGS, Chief Judge; CLAY and ROGERS, Circuit Judges.

    **CLAY, Circuit Judge.** Defendant, Gerald Wayne Collier, appeals the district court's judgment convicting him on one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), and sentencing him to 480 months of imprisonment. For the reasons that follow, we **AFFIRM**.

**BACKGROUND**

    On June 1, 2005, officers responded to an anonymous complaint of a methamphetamine manufacturing operation at 195 Collier Road, London, Kentucky, the residence of Defendant's uncle, Jesse B. (a.k.a. Glen) Collier ("Glen Collier"). At the scene, they encountered Defendant, who fled upon seeing the police. The officers ultimately apprehended Defendant and arrested him. They

recovered a large quantity of methamphetamine from Defendant's car, a small quantity on his person, and approximately $1,900. On July 28, 2005, a federal grand jury in the Eastern District of Kentucky indicted Defendant on one count of possession with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). A jury trial commenced on October 4, 2005.

The prosecution's case-in-chief consisted of testimony from Officer Brian Reams ("Reams"), Deputy Sheriff Daryl Zanet ("Zanet"), Sergeant Eddie Sizemore ("Sizemore"), Deputy Sheriff Albert Hale ("Hale"), Deputy Sheriff Brad Mitchell ("Mitchell"), drug analyst Beverly Wagoner ("Wagoner"), and David Gray ("Gray"), an agent of the Drug Enforcement Agency ("DEA"). Officer Reams testified that, on June 1, 2005, as the officers approached 195 Collier Road, they observed four vehicles parked nearby on the street. Among these, Defendant's vehicle was backed up to a washed-out ditch with the driver's side door and trunk standing open. Officer Reams, the London, Kentucky Director of Public Safety Emergency Management, drove a marked car to the scene that day. Defendant stood in the driver's side door of the vehicle facing Reams and, when the two made eye contact, Defendant began to run. Officer Reams recalled that sheriff's deputies pursued Defendant on foot while Reams exited his vehicle and remained at the scene.

At the scene, Officer Reams approached Defendant's vehicle "to make sure there wasn't anybody laying in the back seat." (J.A. at 68) Finding no one in Defendant's vehicle, Officer Reams secured three individuals present at the scene by keeping their hands in plain view. Later, when the deputies had Defendant in custody, Officer Reams searched Defendant's vehicle. He found no contraband or paraphernalia in the trunk, but on the floor in front of the driver's seat, Reams

observed a black box that resembled an eight-track tape. Reams "keyed in on that because eight-track tapes are way out." (*Id*. at 71) He picked it up and discerned that it was a small box covered in black electrical tape. The officers untaped the box, opened it, and found a substance that appeared to be crushed-up pseudoephedrine, a substance used in manufacturing methamphetamine.

Officer Reams stated that the search of another vehicle at the scene revealed in "plain view on the passenger's side of the vehicle, . . . a purse that was sitting open, [which contained] a small bag of what was suspected to be methamphetamine." (J.A. at 75) In that vehicle, officers also found a "snort straw," a syringe, and a spoon. (*Id*. at 75-77) Finally, Officer Reams testified that methamphetamine may be used in several ways: a user could smoke it, snort it, eat it, and shoot it up. (*Id*. at 70) Thus, he said, use paraphernalia might include syringes, aluminum foil, knives, razor knives, or snort straws, among other things.

Deputy Sheriff Zanet testified that, when Defendant took off running, Sergeant Sizemore followed Defendant within close range, while Zanet himself ran behind Sergeant Sizemore. The chase continued for 200 to 300 yards, and throughout the officers continually implored Defendant to stop. Eventually, Defendant dove into a patch of cattails at the edge of a pond, and the officers went in after him. The officers directed Defendant to show his hands, but he refused. Deputy Sheriff Zanet took hold of Defendant's hands and placed them behind his back, and then conducted a brief pat-down while Defendant remained on the ground. They then stood Defendant up and walked out of the cattails, and handcuffed Defendant.[1] At this point, the officers conducted a "more thorough search" of Defendant, which Zanet described as a "search incident to arrest." (J.A. at 96) Zanet

---

[1]Defendant testified that the officers arrested him for driving under the influence.

3

testified that he recovered a large wad of money on Defendant's person ($1,900), as well as two small bags containing a white crystal substance and a crystal, respectively. However, they found no use paraphernalia on Defendant's person, and none in the patch of cattails where they apprehended him.

Wagoner, a drug analyst with the Kentucky State Police crime lab, testified that the bags found inside the black box contained 55.797 grams[2] of 82 percent pure methamphetamine. Wagoner's calculations revealed that the bags contained 45.757 grams of actual or pure methamphetamine. The bags recovered from Defendant's person held 2.605 grams of a methamphetamine and dimethyl sulfone mixture.[3] Wagoner concluded that the mixture consisted of 63 percent methamphetamine, for a total of 1.641 grams of actual or pure methamphetamine. At the close of Wagoner's testimony, the district court accepted the methamphetamine into evidence.

The court found Gray, a special agent for the DEA, qualified to testify as an expert witness as to the standard dosage units and the average rate of intoxication from methamphetamine use. Gray testified that 2.6 grams of methamphetamine would sell for "in the neighborhood of $150 to $250." (J.A. at 229) Additionally, Gray rendered an opinion that possession of crystal

---

[2]Testimony throughout trial consistently referenced the same weight calculations as indicated by Ms. Wagoner. As will later be discussed, the jury returned a special verdict finding Defendant guilty of possessing 47.398 grams of actual or pure methamphetamine, and 59.165 grams of a mixture containing methamphetamine. We note that the jury's actual or pure methamphetamine calculation clearly follows from the testimony at trial, but that the calculation with respect to the methamphetamine mixture appears to be slightly inaccurate. At any rate, it does not bear on the questions before us today.

[3]Dimethyl sulfone is more typically a nutritional supplement used for horses, but also serves as a cutting agent.

methamphetamine along with dimethyl sulfone is consistent with "possession with intent to distribute, because of the cutting agent." (*Id*. at 230) Gray went on to opine that possession of "just methamphetamine . . . and the tools to use the methamphetamine" would be consistent with possession for personal use. (*Id*.) As Gray put it, "there's no reason to have a cutting agent unless you were attempting to make more methamphetamine." (*Id*.) Gray indicated that absence of any paraphernalia suggests the methamphetamine was intended for resale, not personal use. He further stated that the presence of $1,900 cash suggests the methamphetamine was for sale, not use. Gray estimated that 55.79 grams of methamphetamine "as a block" would sell for approximately $5,000. (*Id*. at 233) If mixed with 55 grams of a cutting agent like dimethyl sulfone, the 110 grams of mixture would sell for twice as much. Finally, Gray testified that methamphetamine produced in Kentucky meth labs is typically 30 to 75 percent pure, whereas methamphetamine produced in Mexico averages 80 to 85 percent pure.

At the close of the government's proof, Defendant moved for a judgment of acquittal. The district court found that the government had met its burden at that point and denied the motion.

Defendant testified in his own behalf. Defendant stated that he went to his uncle Glen Collier's house on June 1, 2005 to push a lawn mower into Glen Collier's barn for storage. Defendant admitted running from the police, and that the officers found money and drugs on his person, but said that those drugs were for personal use. Defendant denied ownership of the black box recovered from his car, and disclaimed all knowledge of the box. Defendant testified that the $1,900 was part of an inheritance from his father. Defendant denied distributing or selling methamphetamine that day.

On cross-examination, Defendant asserted that he used dimethyl sulfone to stretch out his methamphetamine for personal use "because [he's] not rich." (J.A. at 261) He testified that he planned to use the $1,900 in his pocket to pay bills that day because it was the first of the month. Defendant indicated that he began to run when the officers approached because he perceived the officer's Escalade to be an escalator. (*Id*. at 262-63) Later, Defendant stated it was because he had drugs in his pocket. Still later, Defendant explained, "Every time I see the police, I run." (*Id*. at 267) Lastly, Defendant admitted to a previous felony conviction for selling methamphetamine.

At the close of all the evidence, Defendant again moved for a judgment of acquittal, which the court again denied. The court conducted a jury instruction conference and, once instructions were finalized, charged the jury. That same day, the jury convicted Defendant of possession with intent to distribute 59.165 grams of a mixed substance containing a detectible amount of methamphetamine or, alternatively, 47.398 grams of actual methamphetamine. Also that day, the district court sentenced Defendant to serve 480 months of imprisonment, to be followed by eight (8) years of supervised release. Defendant timely appealed, asserting various challenges to his conviction and sentence.

## DISCUSSION

I.  **THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN FAILING TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF POSSESSION.**

A.  **Standard of Review**

We review challenges to the district court's failure to give a lesser included offense instruction for abuse of discretion. *United States v. Ursery*, 109 F.3d 1129, 1135 (6th Cir. 1997).

B.  **Jury Instructions**

Defendant contends that the district court should have instructed the jury on the lesser included offense of possession. Defendant posits that, on the evidence before it, a rational jury could have concluded that he possessed the methamphetamine for personal use, and not with the intent to distribute. According to Defendant, the district court agreed to charge the lesser included offense, but ultimately failed to do so. The government counters that Defendant expressly withdrew his request for a lesser included offense instruction. The government is correct. Therefore, we find no abuse of discretion.

During the jury instruction conference, the following exchange occurred:

[DEFENSE COUNSEL]: . . . I believe that there has been sufficient testimony that this could be only a possession case, a finding of possession against [Defendant]. . . .

THE COURT: Lesser included offense?

[DEFENSE COUNSEL]: Lesser included offense. That's what I'm getting at. So if there is one available, I believe lesser included would be appropriate.

THE COURT: Mr. West [the prosecutor]?

[PROSECUTOR]: He's entitled to it, your Honor.

THE COURT: Do the parties want to draft the special verdict form on that issue? Let's talk. What would be your position with respect to the verdict form that the jury would submit, if they answer not guilty as to the special verdict form that's currently attached? The question would be – I would need to expand the first sentence: "We, the jury, find [Defendant] guilty of the offense of possession with intent to distribute," essentially the language used in the indictment.

"If you find not guilty, then proceed to special Instruction No. 2." Special Instruction No. 2 would

7

read: "We, the jury, find [Defendant] guilty of possession."

[DEFENSE COUNSEL]:     Yes, sir.

(J.A. at 285-86) The prosecution agreed with the proposed instruction, and the district court briefly recessed the jury instruction conference to locate the Sixth Circuit Pattern Jury Instructions. Thus, the district court intended to instruct the jury on the lesser included offense.

However, following the brief recess in the jury instruction conference, Defendant very clearly withdrew his request:

[DEFENSE COUNSEL]:     . . . Before the recess we discussed the issue of lesser included offense. I discussed that with Mr. Collier, and he has instructed me not to request the lesser included.

THE COURT:     I got that message. Mr. Collier, that is your request at this time?

THE DEFENDANT:     As far as I can gather from my knowledge of the law, yes.

THE COURT:     And your discussions with counsel; is that correct? And you have also had a chance to take [sic] to your attorney about that?

THE DEFENDANT:     Yes. He advised me against it.

THE COURT:     You don't have to tell me about the advice, I just wanted to make sure you discussed it with him.

(J.A. at 288-89) As a result, the district court did not instruct the jury on the lesser included offense of possession.

"[T]he defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater."

8

*Keeble v. United States*, 412 U.S. 205, 208 (1973); *see also* Fed. R. Crim. P. 31(c). A lesser

included offense instruction is typically warranted where

> (1) *a proper request is made*; (2) the elements of the lesser offense are identical to part of the elements of the greater offense; (3) the evidence would support a conviction on the lesser offense; and (4) the proof on the element or elements differentiating the two crimes is sufficiently disputed so that a jury could consistently acquit on the greater offense and convict on the lesser.

*United States v. Monger*, 185 F.3d 574, 576 (6th Cir. 1999) (emphasis added).

The district court did not abuse its discretion. Although defense counsel initially requested

a lesser included offense instruction, Defendant himself later instructed counsel to withdraw the

request, and Defendant persisted in doing so notwithstanding counsel's advice to the contrary.

Where, as here, the defendant expressly withdraws his request for a lesser included offense

instruction, we conceive of it as trial strategy, and not reversible error on the district court's part.

*See Look v. Amaral*, 725 F.2d 4, 9 (1st Cir. 1984) (no error in court's failure to give lesser included

offense instruction where defense counsel waived it); *United States v. Lopez Andino*, 831 F.2d 1164,

1171 (1st Cir. 1987) (where defense counsel did not request lesser included offense instruction and

made no objection to given instructions, court did not err); *United States v. Seijo*, 537 F.2d 694, 698-

99 (2d Cir. 1976) (same); *Higgins v. Wainwright*, 424 F.2d 177, 178 (5th Cir. 1970) (trial not

fundamentally unfair where the defendant made no request for the lesser included offense

instruction); *United States v. Meyers*, 443 F.2d 913, 913 (9th Cir. 1971) (defendant's failure to

request instruction construed as trial strategy, and court did not err).

The crux of Defendant's argument is that the evidence would have permitted a rational jury

to find Defendant possessed methamphetamine only for personal use, and not with intent to

distribute. Without a proper request for an instruction on possession – and certainly where Defendant's counsel requested the instruction, the district court intended to so instruct the jury, and Defendant subsequently expressly withdrew the request – we need not consider whether a rational jury could have found, on alternate instructions rejected by Defendant, that Defendant possessed the methamphetamine for personal use, and not for distribution. Consequently, no abuse of discretion occurred.

## II. SUFFICIENT EVIDENCE EXISTED TO CONVICT DEFENDANT OF POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE, PURSUANT TO 21 U.S.C. § 841.

### A. Standard of Review

On a sufficiency of the evidence challenge, we consider whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

### B. Sufficiency of the Evidence

Defendant claims that the government failed to prove the elements of possession with intent to distribute beyond a reasonable doubt. Defendant's counsel moved for a judgment of acquittal both after the close of the government's case-in-chief, and at the end of trial, thereby properly preserving Defendant's sufficiency of the evidence challenge. Having carefully reviewed the trial record, we

hold that sufficient evidence existed to permit a rational jury to convict Defendant of possession with intent to distribute.

Title 21 U.S.C. § 841(a)(1) makes it unlawful to "knowingly or intentionally . . . possess with intent to manufacture, distribute, or dispense, a controlled substance." At trial, the government bore the burden of proving that Defendant (1) knowingly (2) possessed a controlled substance (3) with intent to distribute it. *Id.*; *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995). Viewing the evidence in the light most favorable to the prosecution, a rational jury could find each of these elements beyond a reasonable doubt.

First, testimony at trial establishes that Defendant actually possessed methamphetamine, a Schedule II controlled substance, on his person. Additionally, the record shows Defendant constructively possessed the methamphetamine recovered from his car inasmuch as Defendant stood next to the driver's seat directly adjacent to the black box just prior to the chase, and Officer Reams secured the vehicle until it could be searched. *See United States v. Draper*, 888 F.2d 1100, 1103 (6th Cir. 1989) (acknowledging that constructive possession sustains a conviction under § 841(a)(1)); *United States v. Ushery*, 968 F.2d 575, 581 (6th Cir. 1992) ("Constructive possession exists where one exercises ownership, dominion, or control over an object *or the premises on which it is concealed*.") (emphasis added). The crime lab drug analyst, Wagoner, testified that the black box in Defendant's car and the bags in his pocket contained methamphetamine. Finally, the district court accepted the methamphetamine into evidence.

Second, overwhelming circumstantial evidence supports a finding that Defendant intended to distribute the methamphetamine. *See United States v. Faymore*, 736 F.2d 328, 334 (6th Cir. 1984)

("[T]he intent to distribute can be inferred . . . from circumstantial evidence of possession of large quantities, or an estimated street value of the drug."). Wagoner testified that the methamphetamine recovered from the black box in Defendant's car tested 82 percent pure, as compared to the 63 percent pure methamphetamine found in his pocket. One of the bags found on Defendant's person contained a mixture of methamphetamine and a cutting agent, dimethyl sulfone, a fact which DEA Agent Gray found consistent with "possession with intent to distribute, because of the cutting agent." (J.A. at 230) As Gray put it, "there's no reason to have a cutting agent unless you were attempting to make more methamphetamine." (*Id*.) Agent Gray estimated the street value of the methamphetamine Defendant possessed at approximately $5,000, but noted the street value would rise to $10,000 if Defendant mixed the methamphetamine with equal parts of a cutting agent.

Moreover, the officers recovered $1,900 from Defendant's pocket, which further supports a finding that Defendant was actively engaged in the sale of methamphetamine. The evidence militates against a finding that Defendant merely possessed the methamphetamine for personal use. First, Defendant possessed a rather large quantity of methamphetamine, taking together the drugs recovered from his pocket and his car. Second, testimony proffered by Officer Reams and Deputy Sheriff Zanet establishes that Defendant had no use paraphernalia in his car or on his person. At trial, Gray expressed his opinion that possession of "just methamphetamine . . . and the tools to use the methamphetamine" would be consistent with possession for personal use, but that absence of any paraphernalia suggests the methamphetamine is intended for resale. (*Id*.) Finally, Defendant admitted on cross-examination to previous felony convictions for selling methamphetamine.

Lastly, a rational jury could conclude that Defendant knowingly possessed the methamphetamine. Defendant stood next to the driver's seat of his car when the police approached and ran immediately upon making eye contact with Officer Reams. *Cf. United States v. Garrido*, 467 F.3d 971, 985 (6th Cir. 2006) (finding the defendant's changing temperament during a search of his vehicle, which ultimately uncovered significant quantities of heroin, relevant to knowledge). During the later search of his vehicle, Officer Reams recovered the black box of methamphetamine from the floor in front of the driver's seat. Further, from the time Defendant ran until the officers searched his vehicle, Officer Reams insured that no other person present at the scene had access to the vehicle. Consequently, we hold that sufficient evidence supports Defendant's conviction under 21 U.S.C. § 841(a)(1).

## III. DEFENDANT'S SENTENCE WAS REASONABLE UNDER *BOOKER v. UNITED STATES*.

### A. Standard of Review

We review challenges to the district court's sentencing determinations for reasonableness. *Rita v. United States*, 127 S. Ct. 2456, 2459 (2007); *United States v. Booker*, 543 U.S. 220, 261 (2005).

### B. *Booker* Reasonableness

Defendant contends that the district court applied the United States Sentencing Guidelines (hereinafter "the Guidelines") as though they were mandatory, and failed to give proper consideration to the § 3553(a) factors. We conclude that Defendant's sentence is both procedurally and substantively reasonable.

On March 6, 2006, immediately following the close of Defendant's trial, the district court conducted a sentencing hearing. Defendant's Pre-Sentence Investigation Report ("PSR") set forth a base offense level of 30 on the basis of § 2D1.1 of the Guidelines as applied to 47.39 grams of actual methamphetamine possessed. The PSR adopted a two-level enhancement under § 3C1.1 for obstruction of justice, and applied a five-level enhancement under § 4B1.1 for being a career offender, yielding a total offense level of 37. On the basis of a rather extensive criminal history, the PSR placed Defendant in criminal history category VI. Together, Defendant's total offense level and criminal history category yielded an advisory Guidelines range of 360 months to life imprisonment. In pertinent part, the district court adopted the findings in Defendant's PSR, including the advisory Guidelines range.

The district court heard from defense counsel on the factors under 18 U.S.C. § 3553(a). Defense counsel proffered that Defendant suffers from Hepatitis C, among other medical conditions; that Defendant was 51 years old at the time of sentencing, and thus a lower sentence would adequately deter him from further criminal activity; and that Defendant previously "paid his dues" on crimes listed in the PSR's account of criminal history. (J.A. at 391-92) Defendant then spoke on his own behalf to express that he had learned from his mistake. In response, the government highlighted Defendant's "very extensive criminal history," which began at the age of 18 and includes "very serious narcotics violations, including possession, trafficking, even reckless homicide." (*Id*. at 393) Accordingly, the government requested a sentence near the top of the Guidelines range, which it argued was necessary "to afford adequate deterrence from future criminal conduct and to protect society." (*Id*.)

14

The district court then stated as follows:

. . . I have considered all the information that has been submitted. . . .

The first factor that the Court has to consider in determining the appropriateness of the sentence is what is sufficient but not greater than necessary to comply with a number of statutory factors, and one is the need to afford adequate deterrence from future criminal conduct. Another is related, and that is the need to protect the public from future crimes of this defendant.

When I look at [Defendant's] criminal history, it leads me to believe that if – when he's released, he's going to go back to his – to the same kind of activity. It seems like he can't stop himself from doing that. And so a lengthy sentence is necessary in order to promote both of those two purposes.

I will take into account [Defendant's] medical condition and will recommend to the Bureau of Prisons that he be incarcerated at a facility that is able to address his medical needs, including hepatitis C.

When you look at the purity of the methamphetamine that was involved in this particular case, it also causes you to conclude that [Defendant] was certainly trafficking in a very high purity meth, it's one that can and does cause severe consequences in this area.

When I look at his criminal history and his background, the history and the characteristics of this defendant, the negatives do outweigh any positives that are presented. He's been part of a drug culture and he's been in the criminal justice system since 1972, I believe. As a matter of fact, he's got several felony convictions that were not assessed criminal history points.

So for those reasons, the Court believes that a lengthy sentence is necessary to serve the purposes that I've outlined, as well as to reflect the seriousness of the offense and to promote respect for the law.

(J.A. at 394-95) The district court ultimately sentenced Defendant to 480 months of imprisonment. At the close of the hearing, the district court afforded counsel an opportunity to object to the sentence as imposed. Defense counsel stated, "we would just object to – voice the same objections we filed earlier. We have no objection to the sentencing hearing, though." (*Id*. at 397)

Because Defendant failed to object prior to the conclusion of the sentencing hearing, we review Defendant's *Booker* challenge under a plain error standard. The defendant bears the burden of proof on plain error review, and must demonstrate (1) error, (2) that the error is plain, (3) that the error affects the defendant's substantial rights, and (4) that it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Oliver*, 397 F.3d 369, 378 (6th Cir. 2005). Defendant cannot establish plain error because the district court did not err under *Booker* and its progeny in sentencing Defendant.

Defendant's sentence is reasonable under *Booker* and *Rita*. Review for reasonableness has both a substantive and procedural component. *Rita*, 127 S. Ct. at 2462, 2468; *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005) ("[W]e read *Booker* as instructing appellate courts . . . to consider not only the length of the sentence but also the factors evaluated and the procedures employed by the district court in reaching its sentencing determination."). Defendant contends that the district court treated the Guidelines range as mandatory and failed to properly consider the § 3553(a) factors. We construe Defendant's brief as challenging both the procedural and substantive reasonableness of his sentence and, thus, evaluate both.[4]

1.      *Procedural Reasonableness*

Following the Supreme Court's decision in *Booker*, district court judges must continue to consult the Guidelines, but may do so only for an advisory starting point. *Booker*, 543 U.S. at 744-45 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and

---

[4]Although Defendant did not expressly challenge the substantive reasonableness of his sentence, he did argue that it violates the Eighth Amendment by virtue of its length.

take them into account when sentencing."). The district court must also consider the factors set forth in 18 U.S.C. § 3553(a) in sentencing, and those factors may well support a variance from the advisory Guidelines range. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *see also Rita*, 127 S. Ct. at 2467-68. The question may then arise, as here, whether the district court properly analyzed the relevant § 3553 factors.

In its recent pronouncement in *Rita*, the Supreme Court faced this precise question. *Rita* directs the sentencing judge to "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id*. at 2468. The sufficiency of the sentencing judge's explanation depends upon circumstances such as the "appropriateness of brevity or length, conciseness or detail, when to write, [and] what to say." *Id*. For example, where the defendant advances "nonfrivolous reasons for imposing a different sentence, . . . the judge will normally go further and explain why he has rejected those arguments." *Id*.

In the instant case, the record clearly reflects that the district court considered Defendant's § 3553(a) arguments, but ultimately concluded that Defendant's age and medical condition did not outweigh countervailing considerations – specifically, the need to deter Defendant from committing future similar crimes and to protect society from Defendant, especially in light of his extensive criminal history. *See Rita*, 127 S. Ct. at 2469 ("The record makes clear that the sentencing judge listened to each argument."); *United States v. Liou*, 491 F.3d 334, 340 (6th Cir. 2007); *United States v. Robinson*, — F.3d —, 2007 WL 2112787, at *4 (6th Cir. 2007). Although the district judge imposed a sentence within the advisory Guidelines range, he understood Defendant's need to receive

appropriate medical care, as evidenced by his recommendation to the Bureau of Prisons that Defendant be placed in a facility with adequate medical resources to treat his hepatitis C. *See id*. The § 3553(a) arguments Defendant advanced do not amount to the sort of "nonfrivolous reasons" likely to merit a particularly lengthy or detailed rationale on the record, especially in view of the rather weighty considerations that militate against a more lenient sentence in this case. *See Rita*, 127 S. Ct. at 2468; *Robinson*, 2007 WL 2112787, at \*5. In accordance with *Rita*, the district judge sufficiently explained his reasons for rejecting Defendant's argument under § 3553 for a more lenient sentence.

Defendant further contends that the district judge treated the Guidelines as mandatory. It is true that the district judge did not expressly acknowledge the advisory nature of the Guidelines on the record. However, before he actually imposed a sentence, the district judge said that Defendant's sentence followed from "the Sentencing Reform Act of 1984, as amended and modified by the Supreme Court's decisions in *Booker* and *Fanfan*." (J.A. at 396) Additionally, as evident from the preceding discussion, the district judge considered and weighed the § 3553(a) factors prior to sentencing Defendant. We find this sufficient to signal that the district judge understood that *Booker* rendered the Guidelines advisory, and that he gave the Guidelines only advisory effect in issuing the sentence here challenged. *Cf. Rita*, 127 S. Ct. at 2469 (finding "context and the record make clear" the district judge's reasoning). Consequently, we find that Defendant's sentence was procedurally reasonable.

2. *Substantive Reasonableness*

Reviewing the length of sentences properly calculated under the Guidelines, we apply a rebuttable presumption of reasonableness. *Williams*, 436 F.3d at 708; *see also Rita*, 127 S. Ct. at 2462 (concluding that an appellate court may adopt a presumption of reasonableness). Here, Defendant's 480 month sentence falls within the properly calculated advisory Guidelines range of 360 months to life imprisonment. We therefore credit Defendant's sentence with a rebuttable presumption of reasonableness.

Yet, Defendant's sentence is not exempt from review solely because it falls within the advisory Guidelines range. *See Rita*, 127 S. Ct. at 2465 (noting that presumptions of reasonableness "rather than having independent legal effect, simply recognize[] the real-world circumstance that when the judge's discretionary decision accords with the [Sentencing] Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable"). Section 3553(a) factors, if sufficient to justify a departure from the Guidelines range, can serve as rebuttal evidence to call into question the reasonableness of a Guideline sentence. The crux of substantive reasonableness review is whether "the district court followed its statutory mandate to 'impose a sentence sufficient, but not greater than necessary' to comply with the purposes of sentencing in section 3553(a)(2)." *United States v. Foreman*, 436 F.3d 638, 644 (6th Cir. 2006); *see also United States v. Wilms*, — F.3d —, 2007 WL 2077367, at *3-4 (6th Cir. 2007).

In this case, Defendant's sentence falls within the advisory Guidelines range and, thus, we afford it a rebuttable presumption of reasonableness. *See Williams*, 436 F.3d at 708. Section 3553(a) factors invoked by Defendant – limited to his age and medical condition – do not sufficiently impugn the reasonableness of a within-Guidelines range sentence. Here, the district court expressly found

a sentence of 480 months of imprisonment "sufficient but not greater than necessary" to deter Defendant from future criminal conduct and to protect society, in light of Defendant's rather lengthy criminal history. Accordingly, we hold that Defendant's sentence is also substantively reasonable.

## IV. DEFENDANT'S OTHER CHALLENGES

Defendant also asserts several claims which, in the main, he failed to assert below. These challenges consist of Defendant's claim that the district court erred in failing to *sua sponte* exclude the methamphetamine, that 21 U.S.C. § 841 violates the Commerce Clause to the U.S. Constitution, and that his sentence constitutes cruel and unusual punishment of the kind prohibited by the Eighth Amendment.

### A. Admissibility of Methamphetamine

Defendant acknowledges that he failed to object at trial to the admission of the methamphetamine recovered on his person and in his automobile. Defendant contends that "the Judge should have, *sua sponte*, conducted an inquiry into the facts of the search and seizure . . . pursuant to Rule of Evidence 103(d), and found that said search was illegal, and suppressed all the fruits of that search." (Def.'s Br. at 24-25) Defendant's claim constitutes an attempt to raise new suppression arguments on appeal where Defendant wholly failed to move for suppression on any basis before the district court. Defendant's failure to timely challenge the admissibility of the methamphetamine precludes appellate review.

Motions to suppress evidence must be raised before trial. Fed. R. Crim. P. 12(b)(3)(C). District courts have discretion to set deadlines for pretrial motions to suppress. *Id*. at 12(c). Further, where a defendant fails to bring a pretrial motion to suppress evidence, the party waives that defense,

20

and can only obtain relief from the district court upon a showing of good cause. *Id*. at 12(e). Here, the court set a deadline for motions to suppress, requiring them to be filed at least five days before the pretrial motion hearing on September 7, 2005. Defendant failed to file any suppression motion within the deadline. In fact, Defendant never did file a motion to suppress the evidence on Fourth Amendment grounds prior to trial. Rather, on October 4, 2005, the morning of trial, Defendant brought a "motion to preclude evidence" on the basis of an allegedly incomplete chain of custody. During proceedings before the start of trial, the district court denied the motion to preclude on the merits.

Where a defendant fails to timely file a pretrial motion to suppress evidence, he waives objections to that evidence on appeal. *United States v. Lopez-Medina*, 461 F.3d 724, 738 (6th Cir. 2006); *United States v. Crismon*, 905 F.2d 966, 969 (6th Cir. 1990) ("[O]bjections that appear for the first time on appeal are conclusively deemed to be waived."); *United States v. Worthington*, 698 F.2d 820, 824 (6th Cir. 1983). In the instant case, Defendant failed to file a pretrial motion to suppress the methamphetamine recovered from his vehicle and his person at the scene. Quite simply, Defendant waived this challenge pursuant to Rule 12(e).

Defendant's motion to preclude, filed just before trial and untimely pursuant to the district court's pretrial order, does not require a different result. The motion to preclude alleged that no proper chain of custody could be shown. First, it is unclear whether a motion "[m]erely raising the possibility of tampering" can constitute a motion to suppress for purposes of Federal Rule of Criminal Procedure 12. *See United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997). Absent clear evidence that public officers tampered with the evidence at issue, challenges to the chain of custody

typically go to the weight of the evidence, and not its admissibility. *See United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir. 1990); *Allen*, 106 F.3d at 700. In any event, we need not answer that question today because the motion to preclude was untimely. *See United States v. Obiukwu*, 17 F.3d 816, 819 (6th Cir. 1994); *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir. 1988) ("This court strictly applies Rule 12(b), and has repeatedly held that failure to raise 12(b) motions in a timely fashion precludes appellate review."). Thus, notwithstanding Defendant's eleventh-hour motion to preclude, Defendant waived objections to the admissibility of the methamphetamine under Rule 12(e).

Having initially waived the suppression arguments, Defendant retained the option to seek relief from the waiver by demonstrating good cause. *See* Fed. R. Crim. P. 12(e). The record reflects no attempt on Defendant's part to demonstrate good cause before the district court, or even to assert these challenges during trial. Nor does Defendant's brief on appeal address or explain his Rule 12(e) waiver. Accordingly, Defendant's "omission below to make a facial showing of the 'good cause' required" by Rule 12(e) precludes our review. *See Crismon*, 905 F.2d at 970.

We have in the past exercised our discretion to review for plain error where a defendant timely moves for suppression at the district court on some basis and loses, and later raises new grounds for suppression on appeal. *See Lopez-Medina*, 461 F.3d at 739; *United States v. Critton*, 43 F.3d 1089, 1094 (6th Cir. 1995); *but see United States v. Sachs*, 801 F.2d 839, 846-47 (6th Cir. 1986); *Worthington*, 698 F.2d at 823-24. This case is not before us today, as Defendant brought no timely pretrial motion to suppress. At any rate, review for plain error pursuant to Rule 52(b) extends only to claims "forfeited," and not to rights "waived." *United States v. Olano*, 507 U.S. 725, 731-33

22

(1993). Rule 12(e) expressly provides that a party "waives" evidentiary objections not timely raised. Thus, Rule 52(b) does not permit this court to review challenges waived by virtue of a party's failure to timely file *any* pretrial suppression motion. *See United States v. Scarborough*, 43 F.3d 1021, 1025 (6th Cir. 1994) (noting that, while Rule 52(b) permits review for plain error, "there is a distinction between rights 'forfeited' and rights 'waived,'" and finding defendant waived his Fourth Amendment claim by failing to assert it below); *see also* Wayne R. LaFave, 6 Search & Seizure § 11.7(e) (4th ed. 2006) ("Indeed, it may well be that under the current language of the Federal Rules of Criminal Procedure, appellate review under the plain error rule is foreclosed."). This interpretation of Rule 12(e) renders the provision meaningful within the larger context of the Federal Rules of Criminal Procedure: to permit plain error review of challenges wholly waived under Rule 12 would "render [the Rule] a nullity," as it "would add nothing to the forfeiture principle of Rule 52(b)." *Cf. United States v. Weathers*, 186 F.3d 948, 955 (D.C. Cir. 1999); *cf. also United States v. Anderson*, 472 F.3d 662 (9th Cir. 2006) (also noting "[s]uch a result most likely was not intended by the Supreme Court or Congress"). Further, it is not inconsistent with our Circuit's earliest precedent on the matter, which declined to review waived claims for plain error. *See Sachs*, 801 F.2d at 846-47; *Worthington*, 698 F.2d at 823-24.

Finally, we have in the past observed, in holdings or dicta, that we lack "jurisdiction" to consider claims not properly raised in accordance with Federal Rule of Criminal Procedure 12. *See, e.g.*, *Lopez-Medina*, 461 F.3d at 738; *United States v. Critton*, 43 F.3d 1089, 1093 (6th Cir. 1995); *Crismon*, 905 F.2d at 969; *Sachs*, 801 F.2d at 847. We take note of the Supreme Court's recent exhortations that the term "jurisdiction" should not be loosely invoked, and that we must clarify the

line between jurisdictional bars and other rules precluding or limiting review. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510-16 (2006); *Eberhart v. United States*, 546 U.S. 12, 17-18 (2005) (concluding that the time limit set forth in Federal Rule of Criminal Procedure 33(a) is a non-jurisdictional, "claim-processing rule[]"); *Kontrick v. Ryan*, 540 U.S. 443, 454-55 (2004) (holding litigant's failure to adhere to time requirement in Federal Rules of Bankruptcy Procedure did not deprive court of subject matter jurisdiction). Indeed, at least one previous opinion of this court expressed doubt that Rule 12(e) erects a jurisdictional barrier to review. *See United States v. Hayes*, 218 F.3d 615, 619-20 (6th Cir. 2000). Going forward, in light of these recent cases, we will undoubtedly speak less readily in terms of "jurisdiction" when faced with a defendant's failure to timely file a pretrial suppression motion, as required by Rule 12. However, nomenclature aside, the rule established in our precedent remains steadfast, firmly planted in principles of waiver.[5] We adhere to it today, and hold only that Defendant waived any Fourth Amendment suppression challenge by failing to comply with Rule 12.

**B.     Commerce Clause Challenge to 21 U.S.C. § 841**

Defendant contends that "no evidence offered by the State demonstrat[es] where [Defendant] purchased the methamphetamine or establish[es] where the drugs originated." (Def.'s Br. at 26) In essence, Defendant's argument appears to be that 21 U.S.C. § 841(a)(1) should not have been applied to him because "the connection to interstate commerce is attenuated" in his case. (*Id*. at 27)

---

[5]In fact, although we have often used the term "jurisdiction," equally as many cases reason that failure to bring a pretrial motion to suppress constitutes waiver. *See United States v. Nance*, 481 F.3d 882, 885 n.1 (6th Cir. 2007); *United States v. Wortman*, 47 F.3d 1172, 1995 WL 31589, at *1 (6th Cir. Jan. 26, 1995) (unpublished); *Obiukwu*, 17 F.3d at 819; *Crismon*, 905 F.2d at 969; *Oldfield*, 859 F.2d at 396-97.

We review Defendant's constitutional challenge to § 841 *de novo*. *See United States v. Suarez*, 263 F.3d 468, 476 (6th Cir. 2001) (citing *United States v. Smith*, 182 F.3d 452, 455 (6th Cir. 1999)).

Defendant failed to raise any claim before the district court that application of 21 U.S.C. § 841(a)(1) in his case violates the Commerce Clause. Accordingly, Defendant waived this argument for purposes of appeal. *See Taft Broadcasting Co. v. United States*, 929 F.2d 240, 243 (6th Cir. 1991) ("As a rule, this court declines to entertain arguments not presented in the first instance to the district court.").

Alternatively, if considered on the merits, Defendant's claim nevertheless fails. First, a previous decision of this Circuit appears to control. In *United States v. Tucker*, 90 F.3d 1135, 1140 (6th Cir. 1996), the defendants argued that 21 U.S.C. § 860(a), which doubles the maximum punishment for possession with intent to distribute controlled substances within 1,000 feet of a school, violates the Commerce Clause. The *Tucker* court stated that "§ 860 addresses a clearly commercial activity that has long been within federal power to regulate" and that "drug trafficking is an 'economic enterprise' that substantially affects interstate commerce in numerous clear ways." *Id*. Because "[a] necessary element of a § 860 offense . . . involves 'activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce," the statute did not violate the Commerce Clause. *Id*. at 1141.

Much of the analysis in *Tucker* was based on the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549 (1995). There, the Supreme Court stated:

> . . . [W]e have identified three broad categories of activity that Congress may regulate under its commerce power. First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce,

25

even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce.

*Id*. at 558-59. With respect to the last category, "the proper test requires an analysis of whether the regulated activity 'substantially affects' interstate commerce." *Id*. at 559.

Whether on its face or as applied to Defendant, 21 U.S.C. § 841(a)(1) does not violate the Commerce Clause. Like § 860, § 841(a)(1) "addresses a clearly commercial activity that has long been within federal power to regulate." *See Tucker*, 90 F.3d at 1140. Even if the drugs originated in Kentucky, and were intended to be sold in Kentucky, the Commerce Clause nevertheless gives Congress the authority to criminalize the intrastate sale of methamphetamine inasmuch as it "substantially affects" interstate commerce. Evidence on the record indicates that methamphetamine produced in Mexico is being transported to and sold in Kentucky. To the extent that distributors can claim that their drugs, in fact, originated in Kentucky (perhaps notwithstanding their origin in Mexico), or that the availability of drugs in Kentucky impacts the demand for Mexican-produced methamphetamine, intrastate production and sale *indirectly* affects interstate commerce. *See Wickard v. Filburn*, 317 U.S. 111, 125 (1942) ("[E]ven if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce and this irrespective of whether such effect is . . . 'direct' or 'indirect.'"). Thus, Defendant's Commerce Clause challenge must fail.

### C.     Defendant's Eighth Amendment Challenge

Finally, Defendant contends that his "sentence should be vacated because it is disproportionate to the crime committed even factoring in his past criminal history and the totality

26

of the circumstances concerning his arrest." (Def.'s Br. at 35) As previously stated, Defendant's advisory Guidelines range spanned from 360 months' imprisonment to life. The district court sentenced Defendant to 480 months of imprisonment. The crux of Defendant's claim appears to be that this sentence is functionally like a sentence to life imprisonment. We review this constitutional challenge *de novo*. *Suarez*, 263 F.3d at 476 (citing *Smith*, 182 F.3d at 455).

First, Defendant did not raise an Eighth Amendment challenge to his sentence before the district court at his sentencing hearing, or in his sentencing memorandum. As a result, Defendant failed to preserve this challenge for appeal, and we deem it waived. *See United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995) (finding the defendant's Eighth Amendment challenge not cognizable on appeal because he failed to raise it at his sentencing hearing); *see also Taft Broadcasting Co.*, 929 F.2d at 243.

At any rate, Defendant's Eighth Amendment challenge fails on the merits. Defendant claims that this court "when reviewing Eighth Amendment challenges, adheres to the 'narrow proportionality principle' articulated in *Harmelin v. Michigan*." (Def.'s Br. at 35) Yet, *Harmelin* does not control the result here. *Harmelin* itself stated that "[p]roportionality review is one of several respects in which we have held that 'death is different,' and have imposed protections that the Constitution nowhere else provides." *Harmelin v. Michigan*, 501 U.S. 957, 994 (1991) (plurality); *see also Organek*, 65 F.3d at 63 ("This Court 'will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole.'"). Defendant has not been sentenced to death; rather, Defendant has been sentenced to serve 480 months of imprisonment. Even if Defendant's sentence is functionally equivalent to a life

sentence in his case, it does not exceed the statutory maximum sentence of life imprisonment under 21 U.S.C. § 841(a). *See* 21 U.S.C. § 841(b). "[A] sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000). Consequently, Defendant's Eighth Amendment claim is also unavailing.

## CONCLUSION

For the foregoing reasons, we **AFFIRM**.