**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 10a0531n.06**

**No. 09-1169**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 19, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| GERETHA LEE, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before:     KEITH, COLE, and GIBBONS, Circuit Judges.

KEITH, Circuit Judge.

Defendant-Appellant Geretha Lee ("Lee") was convicted of conspiracy to import a controlled substance, in violation of 21 U.S.C. § 963 (Count 1); conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846 (Count 2); importation of a controlled substance, in violation of 21 U.S.C. § 952(a) (Count 3); and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Count 4). She was sentenced to 100 months of imprisonment. She now appeals, on the ground that the district court committed plain error when it admitted into evidence a written statement she made during the night of her arrest. For the reasons that follow, we **AFFIRM**.

In April of 2007, Lee, an Indiana resident, met Ricardo Vargas ("Vargas"), the co-defendant in the trial, and commenced a romantic relationship with him. On May 17, 2008, Lee traveled to Detroit, Michigan, with Vargas by car. During the trip, Vargas and Lee stopped to meet with Monique Miles ("Miles") in Michigan City, Indiana, a town en route to Detroit. Lee testifies that she had little contact with Miles during this interaction, and previously knew her only vaguely.

Lee testified that she was surprised to see Miles again in Detroit that evening. Vargas stayed behind in Detroit with Miles while Lee drove by herself to the Windsor Casino in Canada. Lee claims that Vargas instructed her to park on the fourth floor of the casino parking garage. She did so, and spent the next five hours in the casino. She also left her car doors unlocked while she was in the casino.

After receiving a call from Vargas, Lee immediately got into her car and proceeded to attempt to cross the border to return to Detroit. Lee crossed the border and entered the United States at 11:16 p.m. on May 17, 2008, and Miles, who apparently traveled to Canada sometime after Lee had, crossed the border into the United States that night on a Tunnel Bus at 11:27 p.m. Lee was then questioned by border patrol agents, and an ensuing search of the car revealed 6,000 ecstasy pills worth between $48,000 and $91,000 hidden behind the car's glove compartment.

While Lee underwent further questioning, she received a flurry of calls on her cell phone. When she saw that Miles was attempting to call her, Lee agreed to set up a controlled delivery using a story concocted by the border patrol agents. Following the direction of the agents, Lee told Miles that she had decided to go to IHOP and had parked the car at the local CVS on East Jefferson Avenue in Detroit. The agents parked the car there and put it under surveillance at approximately

2

2:20 a.m. on May 18, 2008. At approximately 2:40 a.m., Vargas appeared near the CVS store. During that time, Lee had received a phone call on her cell phone from a male. Agents watched as Vargas approached the car, opened the passenger side door, and leaned inside. Vargas then pulled himself out of the car, closed the door, and attempted to walk away. Customs agents then arrested Vargas.

After Vargas was arrested, Lee and the agents returned to the customs offices at the Detroit-Windsor Tunnel. One of the agents asked Lee to write out a statement, saying, "Now, it's your time, you're going to have to write out a confession of what has occurred tonight. I mean, I need something before I can let you go . . ." Lee agreed to make the statement, and after her car was released, she left around 3:30 a.m.

The statement Lee wrote reads as follows:

I Geretha Lee is giving this statement confirming that Monique Miles asked me to go to Canada for her boyfriend to pick up extacy [sic]. She was to meet me after picking-up the extacy [sic]. She called me on my cell phone but I could not hear her phone was hanging-up or she was hanging-up on me. When I found out about the extacy [sic] she called me + asked me about my location. She had Ricardo wire me money.

On May 28, 2008, a grand jury indicted Lee and co-defendant Vargas on four counts, including conspiracy to import a controlled substance, in violation of 21 U.S.C. §963 (Count 1); conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §846 (Count 2); importation of a controlled substance, in violation of 21 U.S.C. §952(a)(Count 3); and possession with intent to distribute a controlled substance, in violation of 21 U.S.C.

3

§841(a)(1)(Count 4). Vargas also was charged with attempting to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. §846 (Count 5).

On September 30, 2008, Lee and Vargas appeared with their respective counsel for a jury trial. On October 6, 2008, the jury returned a verdict of guilty on Counts 1 through 4, as to Lee, and Counts 1 through 5, as to Vargas. On February 3, 2009, the district court sentenced Lee to 100 months of imprisonment. Lee filed a timely notice of appeal on February 9, 2009.

II.

Lee argues that as she did not file a motion to suppress the written statement or object to its admissibility at trial, the admission of her written statement should be reviewed under a "plain error" standard. Pursuant to plain error review, an appellant must demonstrate: (1) that there was an error; (2) that the error was clear or obvious, (3) that it affected the appellant's substantial rights, and (4) that it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732-7 (1993).

However, this Court has held that "when faced with a defendant's complete failure to file a pretrial suppression motion . . . 'we are categorically without jurisdiction to hear appeals of suppression issues raised for the first time on appeal.'" *United States v. Lopez-Medina,* 461 F. 3d 724, 739 (6th Cir. 2006) (citing *United States v. Crismon,* 905 F. 2d 966, 969 (6th Cir. 1990)). This language comports with the Federal Rules of Criminal Procedure, which states in Rule 12(b)(3) that motions to suppress evidence must be made before trial. Fed. R. Crim. P. 12(b)(3). Rule 12(e) goes on to state that a party "waives" any Rule 12(b)(3) defense, objection, or request not raised at the proper time or by an extension the court provides. Fed. R. Crim. P. 12(e). While it is within the court's discretion to review rights that were forfeited below for plain error, waived errors are

"extinguish[ed]" and generally may not be argued on appeal even under the plain error standard. *Olano*, 507 U.S. at 733-34. *See also United States v. Collier,* 246 F. App'x 321, 336 (6th Cir. 2007) (discussing how claims not properly raised in accordance with Fed. R. Crim. P. 12 are "firmly placed in principles of waiver.")

Rule 12(e) provides that the court may grant relief from the waiver "for good cause." Fed. R. Crim. P. 12(e). A showing of good cause generally entails providing the court with a legitimate explanation for failing to make a timely objection. *See United States v. Davis*, 663 F. 2d 824, 831 (9th Cir. 1981). However the record reflects no attempt by Lee to demonstrate good cause before the district court, nor any objection when the written statement was submitted as evidence during trial. Nor does Lee's appellate brief address or explain her Rule 12(e) waiver. Nor does an independent review of the record reveal any legitimate explanation. It follows that Lee's argument that her written statement should have been suppressed for involuntariness has been waived within the meaning of Rule 12(e).

V.

For the foregoing reasons, we **AFFIRM** the decision of the district court.